IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TERI PETIT, | ) |
| | ) |
| Plaintiff, | ) No.12-cv-00318 |
| | ) |
| v. | ) The Honorable Virginia M. Kendall |
| | ) |
| WASHINGTON MUTUAL BANK, F.A.; | ) |
| JPMORGAN CHASE BANK, N.A.; and | ) |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| COMPANY, as Trustee, | ) |
| | ) |
| Defendants. | ) |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS PETIT'S COMPLAINT**

Defendant JPMorgan Chase Bank, N.A. ("Chase"), by its undersigned attorneys, hereby submits this Memorandum in Support of its Motion to Dismiss Plaintiff Teri Petit's ("Petit") Complaint pursuant to Fed. R. Civ. P. 12(b)(b)(6) and 9(b).

## INTRODUCTION

Each of Petit's claims against Chase is premised on an incorrect legal conclusion that Chase has no interest in her mortgage loan; therefore, it was not allowed to collect mortgage payments from her, or proceed with a foreclosure action against her when she defaulted on her loan. The Court should dismiss Petit's Complaint, in its entirety and with prejudice, because the note at issue in this case was endorsed in blank by her originating lender, Washington Mutual Bank, FA and Chase, as the holder of the note endorsed in blank, is entitled to enforce it, together with the mortgage that secures it.

While Petit concludes that her loan was transferred to a trust which she claims was subsequently terminated, she states no facts in support of these allegations. Petit alleges, without

any factual support, that her mortgage and note, originated by Washington Mutual Bank, FA ("WaMu") were sold to the Washington Mutual Mortgage Securities Corp. WaMu Mortgage Pass-Through Certificates, Series 2005-AR1 (the "Trust"). (Compl. ¶15.) Petit then concludes, again without any factual support, that the Trust "was terminated" and that all of the Trust's assets, including her note and mortgage, "were distributed to its certificateholders, which became the only mortgagees, the only holders of the Note and owners of the Mortgage, and the only entities with the authority to decide whether or not to foreclose the Mortgage." (Compl. ¶19.)

Based on these unsupported conclusions, Petit purports to assert six counts against Chase for: (1) quiet title; (2) violation of the Fair Debt Collection practice Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"); (3) violation of the Illinois Collection Agency Act, 225 ILCS 425/1 ("ICAA"); (4) unjust enrichment; (5) slander of title; and (6) violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.* ("CFA"). All of Petit's claims fail because she does not allege facts to support the bare legal conclusion that Chase has no interest in her loan, nor can she. Petit's claims also fail because she waived her claims when she entered into a Loan Modification Agreement with WaMu in 2008. Petit's FDCPA, ICAA, slander of title and CFA claims also fail for additional reasons. Petit's FDCPA and ICAA claims fail because they do not apply to Chase. Petit's slander of title claim fails for the additional reason that an absolute privilege is accorded to judicial pleadings such as foreclosure filings and associated documents such as *lis pendens* and are therefore immune from slander of title claims as a matter of law. Petit's CFA claim also fails because she fails to allege sufficient facts to state a claim for fraud.

## FACTUAL BACKGROUND

On November 23, 2004, Teri L. Petit entered into a mortgage loan agreement with Washington Mutual Bank, FA ("WaMu"), and signed a note (the "Note") and mortgage (the

"Mortgage") secured by the property located at 1007 N. Thatcher Ave., River Forest, Illinois. (A copy of Petit's original Note endorsed in blank by WaMu is attached hereto as Exhibit 1 and a copy of Petit's original Mortgage is attached hereto as Exhibit 2.)[1] WaMu endorsed the Note in blank.

On February 1, 2008, Petit entered into a loan modification agreement with WaMu. (A copy of the Loan Modification Agreement is attached hereto as Exhibit 3.)

On September 25, 2008, the Office of Thrift Supervision closed WaMu, and the Federal Deposit Insurance Corporation (the "FDIC") was named receiver. (*See,* Notice of FDIC Receivership, available at http://www.fdic.gov/bank/individual/failed/wamu.html.) As a result of the FDIC's appointment, WaMu ceased operations. (*Id.*) On that same day, Chase and the FDIC entered into a Purchase and Assumption Agreement pursuant to which Chase purchased certain WaMu assets, including Petit's loan and the right to service it. (*See,* P&A Agreement, available at http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.)

On February 6, 2009, Chase filed a complaint for foreclosure against Petit in the Circuit Court of Cook County, County Department, Chancery Division, case number 09-CH-5361. On February 10, 2009, Chase recorded a *lis pendens* stating that the foreclosure complaint had been filed. (A copy of the *lis pendens* is attached hereto as Exhibit 4.) On November 28, 2011, Petit filed a Motion to Dismiss the foreclosure complaint, claiming Chase had no interest in Petit's Note or Mortgage, and only WaMu had standing to foreclose. (A copy of the Motion to Dismiss

---

[1] Counsel for Chase has Petit's original note and mortgage in their possession and will bring it to Court for inspection at the presentment of this Motion. Counsel for Chase has repeatedly offered to make the original note and mortgage available to Petit's counsel, who, as of the date of this filing, has not made an appointment to inspect the documents but did briefly review them after a court appearance on March 21, 2012.

is attached hereto as Exhibit 5.) On December 9, 2011, the foreclosure court denied Petit's Motion to Dismiss. (A copy of the December 9, 2011 order is attached hereto as Exhibit 6.)[2]

## STANDARD

Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In *Iqbal*, the Supreme Court outlined the framework for evaluating the sufficiency of a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), holding that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, internal citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citations and quotation marks omitted).

In addition, to survive a motion to dismiss a fraud or misrepresentation claim, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As shown below, Plaintiffs fail to meet this standard and this action should be dismissed pursuant to Rule 12(b)(6).

---

[2] The Court may take judicial notice of documents such as court filings, recorded mortgages, government documents, and public filings. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir.1997) (noting courts may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment).

**ARGUMENT**

I. **EACH OF PETIT'S CLAIMS FAIL BECAUSE SHE HAS NOT ALLEGED SUFFICIENT FACTS TO SUPPORT THE CONCLUSION THAT CHASE HAS NO INTEREST IN HER LOAN, NOR CAN SHE.**

Each of Petit's claims is premised on the legal conclusion Chase that "has never purchased or otherwise acquired any interest whatsoever in either the Note or the Mortgage…[and] has no evidence of ownership." (Compl. ¶34.) Based on this demonstrably false conclusion, Petit claims that Chase: (1) could not file a complaint to foreclose or record a *lis pendens* (this conclusion forms the basis of Petit's quiet title, slander of title and CFA claims) or (2) collect payments on the loan (this conclusion forms the basis of Petit's FDCPA, ICAA, and unjust enrichment claims). However, Petit does not – and cannot – allege any facts to support her bare conclusions, because the Note is endorsed in blank and Chase is the holder of the Note. Therefore, the Court should therefore dismiss each of her claims, *with prejudice.*

A. **Petit Alleges No Facts To Support The Conclusions That Her Loan Was Conveyed to The Trust, or that the Trust "Was Terminated."**

Petit concludes, without any supporting factual allegations, that Chase has no interest in her property because WaMu "sold [her] mortgage to Trust [] and made itself servicer" and that the Trust subsequently "was terminated" such that no one but the Trust's certificateholders can enforce her Note and Mortgage. (Compl. ¶¶1, 15, 20.) None of these conclusions are supported by specific facts; indeed, the documents attached to Petit's own Complaint belie them.

First, in support of the purported transfer of her Note and Mortgage to the Trust, Petit alleges the Trust's "Registration Prospectus" attached as Exhibit C to the Complaint "describes the Note and the Mortgage, identifies the Servicer of Trust 2005-AR1 (WaMu) and its Trustee (Deutsche Bank), and shows the date on which the Note and the Mortgage were sold and transferred to Trust 2005-AR1." (Compl. ¶15.) However, nothing in Exhibit C to the Complaint

even mentions Petit, her loan, her property, or any transfer of the Note or Mortgage. The portions of Exhibit C highlighted by Petit's attorney merely show that WaMu was the master servicer of this particular Trust and when the Trust closed, but nothing in Exhibit C "describes the Note and Mortgage" in particular. Furthermore, the Pooling and Servicing Agreement for the Trust, attached as Exhibit D to the Complaint, does not identify Petit's loan as being part of the Trust. In fact, the Mortgage Loan Schedule, Exhibit D to the Pooling and Servicing Agreement (listing all of the loans in the Trust), is not part of Exhibit D to the Complaint. Thus, Petit does not allege facts to support the conclusion that her loan was conveyed to the Trust.

Next, in support of the conclusion that WaMu "lost" its servicing rights to Petit's loan (and therefore Chase could not have acquired them after WaMu failed), Petit alleges that the Trust "was terminated." (Compl. ¶¶18, 19.) In support, Petit points only to a Securities and Exchange Commission ("SEC") Form 15 filing and a purported list of filings which shows the Trust did not make any filings with the SEC after it filed a notice that it was exempt from making future filings. (Compl. Exs. F, G). Contrary to Petit's conclusion, the SEC Form 15 does not indicate in any way that the Trust terminated. (Compl. Ex. F.) Instead, the document plainly states that the Trust is excused from making future filings under Rule 12h-3(b)(1)(i).[3] There are

---

[3] Rule 12h-3 provides, in pertinent part:

(a) Subject to paragraphs (c) and (d) of this section, the duty under section 15(d) to file reports required by section 13(a) of the Act with respect to a class of securities specified in paragraph (b) of this section shall be suspended for such class of securities immediately upon filing with the Commission a certification on Form 15…

(b) The classes of securities eligible for the suspension provided in paragraph (a) of this section are:

    (1) Any class of securities, other than any class of asset-backed securities, held of record by:

        (i) Less than 300 persons…

17 CFR § 240.12h-3.

no facts alleged in the Complaint anywhere to support the conclusion that the Trust terminated, or even if it was terminated, that WaMu lost its servicing rights for any loans in the Trust. (*See generally,* Compl.)

Petit's conclusions that her Note and Mortgage were ever part of the Trust and that the Trust was terminated, are completely unsupported by facts; therefore, each of her claims should be dismissed because they rely on these unsupported conclusions.

> B.  **Petit Should Not Be Given Leave To Amend Because Chase Is The Holder Of Her Note Endorsed In Blank, And Is Therefore Entitled To Enforce It.**

Petit should not be given leave to amend her Complaint, because her Note and Mortgage were never sold to the Trust. Instead Petit's Note was endorsed in blank by WaMu and Chase, as the holder of Petit's Note, is entitled to enforce it. (*See,* Ex. A.)

As Petit acknowledges in her Complaint, "[a]ll mortgagors have a duty to make payments to the correct mortgagee." (Compl. ¶ 37.) Here Chase, as the holder of the Note endorsed in blank, is the correct mortgagee and is entitled to payment, or in the absence of payment, to foreclose. As the Fourth Circuit Court of Appeals has noted:

> Negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. ***Whoever possesses an instrument endorsed in blank has full power to enforce it.***

*Horvath v. Bank of New York*, 641 F.3d 617, 621 (4th Cir. 2011) (emphasis added). *See also, Ocwen Loan Servicing LLC v. Kroening,* 10 C 4692, 2011 WL 5130357, at *4 (N.D. Ill. Oct. 28, 2011) (note endorsed in blank passes by transfer and possession, citing 810 ILCS 5/3–205); U.C.C. § 3-205(b), 810 ILCS 5/3-205(b) (noting an instrument endorsed in blank is payable to the bearer of the instrument). Further, mere possession of a note endorsed in blank is all that is required to show title – no written assignment is necessary. *Read v. Kerr*, 249 Ill. App. 493,

1928 WL 4089, at *3 (1st Dist. Jun. 1928). Moreover, "[t]ransfer of note…operates as assignment of mortgage securing debt and it is not necessary that mortgage itself be specifically transferred in writing or specific written assignment thereof be made." *Lundy v. Messer*, 25 Ill. App. 2d 513, 167 N.E.2d 278 (2d Dist. 1960). Finally, under the Illinois UCC, 810 ILCS 5/3-301, the holder of a note endorsed in blank is entitled to enforce it, even if he is not the "owner."

Because Chase is the holder of Petit's Note, it had standing as mortgagee to file the foreclosure complaint, record the *lis pendens*, and collect payments from Petit. The Illinois Mortgage Foreclosure Law allows "the legal holder of the indebtedness, a pledgee, an agent, or a trustee" to bring a foreclosure action. *See* 735 ILCS 5/15-1504(3)(N); *see also Mortgage Electronic Registration Systems, Inc. v. Barnes*, --- N.E.2d ----, 2010 WL 4967826, at *4 (Ill. App. 1st Dist. Dec. 3, 2010) (internal citations omitted). To be a "holder of an indebtedness" an entity must possess the note at issue. *Schranz v. I. L. Grossman, Inc.*, 90 Ill. App. 3d 507, 514, 412 N.E.2d 1378, 1385 (1st Dist. 1980).

Because each of Petit's claims is based on the false conclusion that Chase has no interest in her Note and Mortgage, the Court should dismiss each of Petit's claims, *with prejudice*.

## II. PETIT WAIVED HER CLAIMS WHEN SHE SIGNED A LOAN MODIFICATION AGREEMENT WITH WAMU IN 2008.

Each of Petit's claims fail for the additional reason that she waived them when she entered into the Loan Modification Agreement with WaMu in 2008 (well after her loan was allegedly sold to the Trust and the Trust was purportedly terminated). In signing the Loan Modification Agreement, Petit agreed that she did "not have any defenses, offsets or counterclaims" to the loan amount and that she "ratifies and reaffirms the validity of the lien of the Security Instrument and each and every of [her] obligations under the Loan Documents, as modified, amended and supplemented by this Agreement." (Ex. 5, para. 1.) Therefore, because

Petit expressly waived any claims relating to the loan, and affirmed the validity of the loan, her claims against Chase must be dismissed, *with prejudice*.

### III.    PETIT'S SLANDER OF TITLE CLAIM FAILS FOR ADDITIONAL REASONS.

Petit's slander of title claim, based entirely on Chase's filing of the foreclosure complaint and recording a *lis pendens,* fails for the additional reasons that the foreclosure complaint and the *lis pendens* are subject to an absolute privilege because they are statements made "in the course of judicial or quasi-judicial proceedings." *Parrillo, Weiss & Moss v. Cashion,* 181 Ill.App.3d 920, 928, 537 N.E.2d 851 (1989); *Ringier America, Inc. v. Enviro-Technics, Ltd.*, 284 Ill. App. 3d 1102, 1105, 673 N.E.2d 444, 446 (1st Dist. 1996) (holding absolute privilege accorded to defamatory statements contained in judicial pleadings extends to filing of associated *lis pendens*).  This absolute privilege "provides complete immunity from civil action, even [where] statements are made with malice, because public policy favors the free and unhindered flow of such information."  *Starnes v. International Harvester Co.,* 184 Ill. App. 3d 199, 203, 132 Ill.Dec. 566, 539 N.E.2d 1372 (1989).  Because Chase's foreclosure complaint and *lis pendens* are accorded an absolute privileged (in addition to the fact that they are true, as established above), the Court should dismiss Petit's slander of title claim, *with prejudice*.

### IV.    PETIT'S FDCPA AND ICAA CLAIMS FAIL FOR ADDITIONAL REASONS.

The Court should dismiss Counts II and III, which purport to bring claims under the FDCPA and ICAA, for the additional reason that those statutes do not apply to Chase.  Any claim under the ICAA must be dismissed because it does not apply to banks, such as Chase.  225 ILCS 425/2.03(1), (8); *see also, RBS Citizens, N.A. v. Compuray Staffing, Inc.,* No. 11-cv-2586, 2012 WL 502653, at *3 (N.D. Ill. Feb. 15, 2012) (holding ICAA defense against bank "is without merit" and affirming summary judgment).

9

Likewise, Petit cannot state any FDCPA claim against Chase because the FDCPA only applies to debt collectors, as that term is defined by the Act. *See id.* §§ 1692e ("a debt collector may not . . ."); 1692a(6) (defining "debt collector" as a person or entity who collects "debts owed or due or asserted to be owed or due another"). Chase cannot be a debt collector because it is a creditor collecting its own debt. *See Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act."). Further, to the extent Chase acted as Petit's mortgage servicer, it is also not a "debt collector" under the FDCPA if the loan was not in default when the servicer began servicing the loan. *See* 15 U.S.C. § 1692a(6)(F)(iii) (the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person").[4] Petit does not allege she was in default at any time, therefore, Chase cannot be deemed to be a "debt collector" in acting as Petit's mortgage servicer. Because the neither the FDCPA nor the ICAA applies to Chase, the Court should dismiss Count II and III of the Complaint with prejudice.

V. **PETIT'S CFA CLAIM FAILS TO PLEAD FRAUD WITH PARTICULARITY.**

Petit's CFA also fails because it does not comply with Fed. R. Civ. P. 9(b),[5] which requires her to "state with particularity the circumstances constituting fraud" and "requires the 'who, what, when, where, and how' of the circumstances of the fraud or mistake." *Greer v. Advanced Equities, Inc.*, No. 08 C 4958, 2009 WL 1748410, at *5 (N.D. Ill. June 19, 2009) (citations omitted). "[A] plaintiff

---

[4] *See also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt collector does not include . . . a mortgage servicing company . . . .") (citations omitted); *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1052-53 (E.D. Cal. 2009) (same) (dismissing FDCPA claim); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (dismissing FDCPA claim brought against mortgage servicer).

[5] Rule 9(b) applies to claims asserted under CFA. *Hickman v. Wells Fargo Bank N.A.*, No. 09-cv-5090, 2010 WL 345962, at *13 (N.D. Ill. Jan. 26, 2010) (dismissing ICFA fraud claim).

alleging fraud must plead the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (citations and quotations omitted). Petit's CFA claim does not identify: (1) any deceptive statement made by Chase to Petit; (2) who at Chase made an allegedly deceptive statement (3) when any allegedly deceptive statement was made; (4) where and by what method any allegedly deceptive statement was made; or (5) how any statement made by Chase constituted fraud. Accordingly, the Court should also dismiss Plaintiff's CFA claims for the failure to comply with Rule 9(b).

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Petit's Complaint with prejudice.

Dated: March 22, 2012                    JPMORGAN CHASE BANK, N.A.

                                          By:   /s/ Susan J. Miller Overbey
                                                One of its attorneys

                                          Edward J. Lesniak
                                          Susan J. Miller Overbey
                                          Burke, Warren, MacKay & Serritella, P.C.
                                          330 North Wabash Avenue, 22nd Floor
                                          Chicago, Illinois 60611-3607
                                          Telephone:    (312) 840-7000
                                          Facsimile:    (312) 840-7900

1113206.1